Docket No. 109156.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

K. MILLER CONSTRUCTION COMPANY, INC., Appellee, v. JOSEPH J. McGINNIS *et al.,* Appellants.

*Opinion filed September 23, 2010.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

The Home Repair and Remodeling Act (815 ILCS 513/15 (West 2006)) states that, "[p]rior to initiating home repair or remodeling work for over $1,000, a person engaged in the business of home repair or remodeling shall furnish to the customer for signature a written contract or work order." At issue here is whether a home remodeling contractor who violates this provision and enters into an oral contract for home remodeling work over $1,000 may enforce the oral contract or seek recovery in *quantum meruit* against a homeowner who has refused to pay for a completed home remodeling project. The appellate court concluded that such a contractor may not enforce the oral contract but may seek recovery in *quantum meruit.* 394 Ill. App. 3d 248. For the reasons that follow, we hold that

recovery is available under both theories.

Background

The plaintiff, K. Miller Construction Company, Inc., filed a second-amended complaint in the circuit court of Cook County against the defendants, Joseph and Frances McGinnis. The complaint alleged the following.

Plaintiff is an Illinois construction firm whose sole owner is Keith Miller. Defendant Joseph McGinnis is an Illinois real estate attorney who has been in practice since 1970 and been a division counsel for United General Title Insurance Company for 10 years. Defendant Frances McGinnis is Joseph McGinnis's wife. Plaintiff has done remodeling work for defendants in the past and, prior to the initiation of this litigation, Joseph McGinnis and Miller were friends.

In the spring of 2004, defendants purchased a three-flat apartment building in Chicago. Defendants intended to convert the building into a single-family residence by demolishing and rebuilding the interior of the building while retaining the building's exterior structure. Architectural plans were drawn up and several discussions took place among defendants, the architect and Miller about the scope and details of the work to be performed. In the fall of 2004, plaintiff entered into an oral contract with defendants to undertake the remodeling project as general contractor for the sum of $187,000.

In December 2004 and January 2005, defendants told Miller that they wanted to "vastly increase" the work to be performed on the building and that the architect would develop new plans and specifications for the expanded project. The new work included, among other things, lowering of the basement foundation and floor, installation of steel beams and framework to replace wood materials, replacement of plumbing, installation of additional heating, ventilation and air conditioning, and related changes. These modifications raised the total cost of the project to approximately $500,000.

Defendants instructed Miller to assist them in obtaining a new building permit for the construction changes. The permit was issued by the City of Chicago in January 2005. Plaintiff proceeded to perform the construction ordered by defendants according to the

revised architectural plans and the new building permit.

Defendants paid the first $65,000 of invoices issued by plaintiff from April 2005 to June 2005. In September 2005, plaintiff submitted an invoice to defendants for $58,000. Defendants refused to pay the invoice and told Miller they did not want to make any further payments until all construction work on the project was completed. Plaintiff was unable to finance the remainder of the construction on its own and, therefore, obtained a bank line of credit for $150,000 to complete the remodeling project.

Defendants visited the construction site at least weekly in 2005 and 2006 to review and give approval to construction work plaintiff had performed. In June and July of 2006, defendants conducted final walk-throughs of the property. Defendants approved all of the construction work with the exception of certain flooring that defendants estimated would cost $300 to repair. Plaintiff's final day of construction on the project was July 10, 2006. Defendants made some additional payments to plaintiff but at the close of construction, the balance due to plaintiff for labor and materials furnished was over $300,000. Defendants refused to pay plaintiff any of this amount.

Plaintiff thereafter filed a three-count, second-amended complaint against defendants. Count I sought to foreclose a mechanic's lien. Count II alleged a breach of contract. Count III, which was pled in the alternative, sought recovery in *quantum meruit* for the reasonable value of plaintiff's work.

Defendants filed a motion to dismiss pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2006)). With respect to count II of plaintiff's complaint, defendants maintained that the oral contract plaintiff entered into with defendants "violates Illinois law and is therefore not enforceable." In support, defendants pointed to section 15 of the Home Repair and Remodeling Act (Act) (815 ILCS 513/15 (West 2006)), which states that persons "engaged in the business of home repair or remodeling" shall provide customers with "a written contract or work order" prior to beginning work on a project costing more than $1,000, and section 30 of the Act (815 ILCS 513/30 (West 2006)), which at the time plaintiff filed its complaint, stated that it is "unlawful" to engage in home remodeling "before obtaining a signed contract or work order over $1,000." Defendants noted that plaintiff's complaint alleged that the

remodeling contract was not in writing and that it was for work totaling more than $1,000. Based on these facts, defendants maintained that the contract violated the Act and was unenforceable and, therefore, that count II of plaintiff's complaint should be stricken. Further, because a mechanic's lien may be enforced only if there is a valid underlying contract, defendants contended that count I of plaintiff's complaint should also be stricken.

With respect to count III of plaintiff's complaint, defendants cited to *Smith v. Bogard*, 377 Ill. App. 3d 842, 848 (2007), wherein the appellate court held that allowing a contractor to recover in *quantum meruit* when he has breached the writing requirement of the Act "would run afoul of the legislature's intent of protecting consumers, would reward deceptive practices, and would be violative of public policy." Relying on *Bogard*, defendants contended that count III of plaintiff's complaint should be stricken and plaintiff's action dismissed.

The circuit court granted defendants' motion and dismissed plaintiff's cause of action with prejudice.

The appellate court affirmed in part and reversed in part. 394 Ill. App. 3d 248. The appellate court unanimously agreed that plaintiff's claims for breach of contract and foreclosure of mechanic's lien could not go forward. The appellate court reasoned that because the Act imposes a writing requirement for remodeling work costing over $1,000, the Act necessarily "bars the enforcement of an oral contract." 394 Ill. App. 3d at 254.

However, on the question of whether plaintiff could recover in *quantum meruit*, the appellate court was divided. Justice Garcia, writing the lead opinion for the court, concluded that plaintiff could proceed with its *quantum meruit* claim because there was "no clear and plain intent in the Act to do away with *quantum meruit*, an equitable remedy that is a part of our common law going back to the times when Abraham Lincoln practiced in our courts." 394 Ill. App. 3d at 258. In reaching this conclusion, Justice Garcia expressly disagreed with the appellate court's decision in *Bogard*. 394 Ill. App. 3d at 258-61.

Justice Robert Gordon agreed with the result reached by Justice Garcia, but not his reasoning. Justice Gordon pointed to the last

sentence of section 30 of the Act, which, at the time plaintiff's complaint was filed, stated that the failure to obtain a written contract is "unlawful but is not exclusive nor meant to limit other kinds of methods, acts, or practices that may be unfair or deceptive" (815 ILCS 513/30 (West 2006)). Justice Gordon concluded that this sentence "leaves the door open to equitable remedies, such as the *quantum meruit* claim in this case." 394 Ill. App. 3d at 266 (Gordon, J., specially concurring).

Justice Wolfson dissented. Justice Wolfson concluded that *quantum meruit* was unavailable to plaintiff, as there was no authority "supporting the proposition that an act declared unlawful by the legislature can be sanitized by filtering it through a court of equity." 394 Ill. App. 3d at 267 (Wolfson, J., dissenting).

We allowed defendants' petition for leave to appeal. 210 Ill. 2d R. 315.


Analysis

The circuit court granted defendants' motion to dismiss brought pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2006)). A section 2–615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). In ruling on a section 2–615 motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered. *Pooh-Bah Enterprises, Inc.*, 232 Ill. 2d at 473. The court must also accept as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn from those facts. *Pooh-Bah Enterprises, Inc.*, 232 Ill. 2d at 473. We review *de novo* an order granting a section 2–615 motion to dismiss. *Pooh-Bah Enterprises, Inc.*, 232 Ill. 2d at 473.

At the outset, plaintiff suggests that defendants' motion to dismiss should have been brought under section 2–619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2–619(a)(9) (West 2006)) because the motion raised an affirmative defense, *i.e.*, that the oral contract between plaintiff and defendants violates the Act and, hence, is unenforceable as a matter of public policy. See 735 ILCS 5/2–613(d)

(West 2006) (listing illegality as an affirmative defense). However, section 2–619(a)(9) speaks in terms of affirmative *matter*, not affirmative *defenses*: "If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit: *** (9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2–619(a)(9) (West 2006). An affirmative *defense* may be raised in a section 2–615 motion where the defense is "established by the facts apparent on the face of the complaint" and no other facts alleged in the complaint negate the defense. 3 R. Michael, Illinois Practice §27.2, at 492 (1989). Here, the factual basis of defendants' affirmative defense is found in plaintiff's own allegations that the remodeling contract was oral and was for work totaling more than $1,000.

Turning to the merits, defendants contend that the appellate court erred when it concluded that plaintiff could pursue relief in *quantum meruit* and reversed the circuit court's dismissal of count III of plaintiff's complaint. According to defendants, it is inconsistent to hold, as the appellate court did, that plaintiff may not recover in contract for having violated the Act, but that it may recover in equity. Citing to *Bogard*, defendants further argue that to allow a contractor who fails to comply with the writing requirement of the Act to seek relief in *quantum meruit* would defeat the intent of the General Assembly and violate the public policy expressed in the Act.

Plaintiff disputes defendants' assertion that *quantum meruit* is unavailable and also challenges the appellate court's holding that plaintiff's claim for breach of contract in count II was properly stricken by the circuit court. We address the latter issue first. If there is no public policy that would prohibit plaintiff from recovering in contract, then there is no inconsistency in plaintiff pursuing relief in *quantum meruit*. Accordingly, our resolution of whether plaintiff may pursue its claim for breach of contract may also determine whether plaintiff may seek relief in *quantum meruit*.

Section 178 of the Restatement (Second) of Contracts (1981) sets forth the following rule regarding the unenforceability of a contractual term because of the violation of a statute or other public policy:

"§178 When a Term Is Unenforceable on Grounds of

-6-

Public Policy

(1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.

(2) In weighing the interest in the enforcement of a term, account is taken of

(a) the parties' justified expectations,

(b) any forfeiture that would result if enforcement were denied, and

(c) any special public interest in the enforcement of the particular term.

(3) In weighing a public policy against enforcement of a term, account is taken of

(a) the strength of that policy as manifested by legislation or judicial decisions,

(b) the likelihood that a refusal to enforce the term will further that policy,

(c) the seriousness of any misconduct involved and the extent to which it was deliberate, and

(d) the directness of the connection between that misconduct and the term." Restatement (Second) of Contracts §178 (1981).

Pursuant to the Restatement, in considering whether a contractual term is unenforceable as against public policy because of a statutory violation, the first step is to examine the relevant statute itself. If the statute explicitly provides that a contractual term which violates the statute is unenforceable then, barring any constitutional objection, the term is unenforceable. Conversely, if it is clear that the legislature did not intend for a violation of the statute to render the contractual term unenforceable, and that the penalty for a violation of the statute lies elsewhere, then the contract may be enforced. But where the statute is silent, then the court must balance the public policy expressed in the statute against the countervailing policy in enforcing contractual agreements:

"Only infrequently does legislation, on grounds of public policy, provide that a term is unenforceable. When a court reaches that conclusion, it usually does so on the basis of a public policy derived either from its own perception of the need to protect some aspect of the public welfare or from legislation that is relevant to that policy although it says nothing explicitly about unenforceability. See §179. In some cases the contravention of public policy is so grave, as when an agreement involves a serious crime or tort, that unenforceability is plain. In other cases the contravention is so trivial as that it plainly does not preclude enforcement. In doubtful cases, however, a decision as to enforceability is reached only after a careful balancing, in the light of all the circumstances, of the interest in the enforcement of the particular promise against the policy against the enforcement of such terms. The most common factors in the balancing process are set out in Subsections (2) and (3). Enforcement will be denied only if the factors that argue against enforcement clearly outweigh the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement of the particular term." Restatement (Second) of Contracts §178, Comment *b*, at 8 (1981).

Importantly, the fact that there has been a statutory violation does not, in itself, automatically render a contract unenforceable:

"The strength of the public policy involved is a critical factor in the balancing process. Even when the policy is one manifested by legislation, it may be too insubstantial to outweigh the interest in the enforcement of the term in question." Restatement (Second) of Contracts §178, Comment *c*, at 8 (1981).

See also 5 R. Lord, Williston on Contracts §12:4, at 995-96 (4th ed. 2009) ("To assert, however, as some courts have, that all unlawful agreements are ipso facto void is opposed to many decisions and unfortunate in its consequences, for it may protect a guilty defendant from paying damages to an innocent plaintiff"); 15 Corbin on Contracts §89.1, at 614 (rev. ed. 2003) ("The decision of whether and how to enforce a contract involving a prohibited performance is and

must be based on policy choices and a balancing of relevant factors").

Illinois law is in accord with the Restatement. For example, in *Pascal P. Paddock, Inc. v. Glennon*, 32 Ill. 2d 51 (1964), a contractor entered into a written agreement with certain property owners to construct a pool and bathhouse. After the owners refused to pay, the contractor brought suit to foreclose a mechanics' lien. The property owners contended, however, that the underlying contract was unenforceable because the contractor had used unlicensed plumbers in the construction of the pool, in violation of the Illinois Plumbing License Law (Ill. Rev. Stat. 1961, ch. 111½ , par. 116.38). The appellate court agreed with the property owners, but this court reversed.

In so doing, we noted that a statutory violation does not automatically render a contract unenforceable: "the mere fact that [a contract] was performed in violation of law will not invalidate the resulting lien if not seriously injurious to the public order." *Paddock*, 32 Ill. 2d at 53-54. Applying this rule, we then examined the facts and concluded that the contract could be enforced because any violation of the licensing statute which may have occurred was not "seriously injurious to the public order." *Paddock*, 32 Ill. 2d at 54. See also, *e.g.*, *Federal Land Bank of St. Louis v. Walker*, 212 Ill. App. 3d 420, 422 (1991) ("Merely because a contract may violate some law or some regulation does not necessarily make that contract unenforceable"); *Duncan v. Cannon*, 204 Ill. App. 3d 160, 169-70 (1990) (party's failure to strictly abide by a municipal ordinance did not operate as a bar to recovery for breach of contract); *South Center Plumbing & Heating Supply Co. v. Charles*, 90 Ill. App. 2d 15, 18 (1968) ("not all violations of law brought about in the performance of a contract are considered serious enough to prevent recovery on the contract by the party who violates the law").

With the foregoing principles in mind, we turn to the case at hand. In holding the oral contract at issue here unenforceable, the appellate court relied on sections 15 and 30 of the Act. Section 15 provides:

> "§15. Written contract; costs enumerated requirements; contents. Prior to initiating home repair or remodeling work for over $1,000, a person engaged in the business of home repair or remodeling shall furnish to the customer for signature a written contract or work order that states the total

-9-

cost, including parts and materials listed with reasonable particularity and any charge for an estimate. In addition, the contract shall state the business name and address of the person engaged in the business of home repair or remodeling. If the person engaged in the business of home repair or remodeling uses a post office box or mail receiving service or agent to receive home repair or remodeling business correspondence, the contract also shall state the residence address of the person engaged in the business of home repair or remodeling." 815 ILCS 513/15 (West 2006).

Section 30, at the time plaintiff's complaint was filed, stated:

"§30. Unlawful acts. It is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000 and before notifying and securing the signed acceptance or rejection, by the consumer, of the binding arbitration clause and the jury trial waiver clause as required in Section 15 and Section 15.1 of this Act. This conduct is unlawful but is not exclusive nor meant to limit other kinds of methods, acts, or practices that may be unfair or deceptive." 815 ILCS 513/30 (West 2006).

Based on these provisions, the appellate court reasoned:

"When the Miller construction company began home remodeling work for the McGinnises without obtaining a signed contract or work order, it violated the terms of the Home Repair Act and, therefore, was precluded from proving up an oral contract, as the Act declares such contracts 'unlawful.' " 394 Ill. App. 3d at 265.

In other words, according to the appellate court, because there was a statutory violation or "unlawful" act, the contract was, *ipso facto*, unenforceable. This was error. The General Assembly is capable of stating when a contractual term that violates a statute is unenforceable. See, *e.g.*, 720 ILCS 5/28–7 (West 2008) (gambling contracts are "null and void"); 50 ILCS 105/3 (West 2008) (contracts in which a public official has a financial interest and may be called to vote upon are "void"); 625 ILCS 5/18c–4105 (West Supp. 2009)

-10-

(indemnity agreements in motor carrier transportation contracts are "void and unenforceable"). The General Assembly did not do so here. See *Fandel v. Allen*, 398 Ill. App. 3d 177, 192 (2010) (Schmidt, J., specially concurring) ("it was not the legislature that said any violation of the Home Repair Act, *ipso facto*, renders the contract unenforceable; it was some judges"); *Universal Structures, Ltd. v. Buchman*, __ Ill. App. 3d __, __ (2010) ("the Act is void of any language which serves to invalidate the parties' agreement when the contractor fails to secure a signed written contract or work order"); see also Restatement (Second) of Contracts §179, Comment *b*, at 16 (1981) ("legislators seldom address themselves explicitly to the problems of contract law that may arise in connection with [proscribed] conduct. *** Usually they do not even have these problems in mind and say nothing as to the enforceability of terms").

Sections 15 and 30 of the Act make plain that an oral contract for home remodeling over $1,000 is a statutory violation. However, the Act left it an open question as to whether a statutory violation rendered an oral contract unenforceable. Accordingly, the appellate court should have conducted a balancing analysis and considered the relevant facts and public policies before concluding that plaintiff could not pursue relief for breach of contract.

Having determined that the appellate court erred, we ordinarily would either remand to the appellate court to perform the required balancing analysis or conduct the analysis ourselves. See, *e.g.*, *Asdourian v. Araj*, 38 Cal. 3d 276, 289-94, 696 P.2d 95, 104-07, 211 Cal. Rptr. 703, 711-15 (1985) (conducting a balancing analysis and concluding that an oral contract for remodeling was enforceable, notwithstanding a statute which required that remodeling contracts in excess of $500 be in writing and which made violations of the statute a misdemeanor offense). However, we need not do so here. Legislation which was enacted after the appellate court rendered its decision in the case at bar has clarified that the General Assembly did not intend for violations of the writing requirement under the Act to render oral contracts unenforceable.

Public Act 96–1023, effective July 12, 2010, has entirely rewritten section 30 of the Act, removing all references to the word "unlawful" and indicating that the remedy for violations of the Act is to be had under the Consumer Fraud and Deceptive Business

Practices Act (815 ILCS 505/10(a) (West 2008)). The section now reads:

> "Sec. 30. Action for actual damages. Any person who suffers actual damage as a result of a violation of this Act may bring an action pursuant to Section 10a of the Consumer Fraud and Deceptive Business Practices Act." Public Act 96–1023, eff. July 12, 2010.

"A subsequent amendment to a statute may be an appropriate source for discerning legislative intent." *In re Detention of Lieberman*, 201 Ill. 2d 300, 320-21 (2002) (citing *People v. Parker*, 123 Ill. 2d 204, 211 (1988), and *Carey v. Elrod*, 49 Ill. 2d 464, 472 (1971)). As we have explained, while an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it previously existed, " 'the presumption is not controlling [citations] and may be overcome by other considerations.' " *Parker*, 123 Ill. 2d at 211, quoting *People v. Nunn*, 77 Ill. 2d 243, 248 (1979). "The circumstances surrounding the amendment should be considered and: 'If they indicate that the legislature intended only to interpret the original act, the presumption of an intention to change the law is rebutted.' " *Parker*, 123 Ill. 2d at 211, quoting *People v. Youngbey*, 82 Ill. 2d 556, 563 (1980). A number of factors may indicate whether an amendment is merely a clarification rather than a substantive change in the law: "whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history." *Middleton v. City of Chicago*, 578 F.3d 655, 663-64 (7th Cir. 2009); see also 1A N. Singer, Sutherland on Statutory Construction §22.30, at 366, 374-75 (6th ed. 2002 rev.) ("Although generally, a statutory amendment is presumed to have been intended to change the law, the legislative history may indicate that the amendment was intended instead as a clarification. *** [In addition, the] time and circumstances surrounding the enactment of the amendment may indicate that the change wrought by the amendment was formal only-that the legislature intended merely to interpret the original act").

At the time the General Assembly was considering Senate Bill 2540 (the bill which would become Public Act 96–1023), there was

disagreement in our appellate court as to the effect a violation of the Act had on the legal claims that could be pursued by a contractor. For example, as noted previously, the appellate court in *Smith v. Bogard*, 377 Ill. App. 3d 842 (2007), had concluded that a contractor who violated the writing requirement of the Act could not recover in *quantum meruit*, while the appellate court in the case at bar had concluded the opposite. Further, while the appellate court in both this case and others had concluded that recovery in contract was *per se* unavailable, the appellate court in *Fandel v. Allen*, 398 Ill. App. 3d 177, 186 (2010), had concluded that a violation of the Act "does not act to automatically invalidate the agreement between the parties." The doctrine of substantial compliance had also been invoked by our appellate court in addressing violations of the Act. See *Behl v. Gingerich*, 396 Ill. App. 3d 1078 (2009).

The existence of these conflicting appellate decisions negates the presumption that the legislature's removal of the word "unlawful" from section 30 was a change in the law. Because of the differing views in the appellate court, there was no clear interpretation of the law to be changed. It follows, therefore, that Public Act 96–1023 was meant to clarify the previous law and make clear that a violation of the Act does not render oral contracts unenforceable or relief in *quantum meruit* unavailable and that, instead, the remedy for violations of the Act lies elsewhere.

Legislative history supports this conclusion. During the debate on Senate Bill 2540, Senator Wilhelmi, the Senate sponsor of the bill, stated:

> "Senate Bill 2540 does two things. First, it resolves confusion as to the proper remedy for the courts to apply by providing that any person who suffers actual damages as a result of a violation of the Home Repair and Remodeling Act may bring an action under the Consumer Fraud and Deceptive Business Practices Act. Secondly, the Home Repair and Remodeling Act requires a contractor to give a pamphlet to his–his–his customer, as well as to have a signed contract with that customer. However, what the courts have found is that some of these consumers are using the Act to get out of paying the balance due on a home repair or remodeling contract. So the courts are asking for a clarification of this. I think what we are

-13-

doing through this bill is saying that, unless there's actual damages, a consumer cannot get out of paying the balance due to a home repair or remodeling company by using these two technical provisions in the Act of requiring a pamphlet to be given and requiring a written contract before work on the project." 96th Ill. Gen. Assem., Senate Proceedings, March 9, 2010, at 68 (statements of Senator Wilhelmi).

In light of the foregoing, we conclude that Public Act 96–1023 is a clarification of the prior statute and must be accepted as a legislative declaration of the meaning of the original Act. There is, therefore, no public policy requiring that oral contracts for home remodeling over $1,000 be held unenforceable or that relief in *quantum meruit* be denied. Accordingly, the appellate court erred in upholding the circuit court's dismissal of counts I and II of plaintiff's complaint, but properly reversed the dismissal of count III of plaintiff's complaint.

## Conclusion

For the foregoing reasons, we reverse that part of the appellate court's judgment which affirmed the circuit court's dismissal of counts I and II. We affirm that part of the appellate court's judgment which reversed the circuit court's dismissal of count III. The judgment of the circuit court is reversed, and the cause is remanded to that court for further proceedings.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment reversed;*
*cause remanded.*