2020 IL App (1st) 191074

FOURTH DIVISION
July 16, 2020

No. 1-19-1074

| | | |
|---|---|---|
| GRUND & LEAVITT, P.C., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 L 11283 |
| | ) | |
| RICHARD STEPHENSON, | ) | Honorable |
| | ) | Margaret A. Brennan, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Reyes and Burke concurred in the judgment and opinion.

## OPINION

¶ 1 In October 2018, plaintiff, Grund & Leavitt, P.C. (Grund), a law firm, filed a complaint against defendant, Richard Stephenson, its former client, to recover under a written agreement whereby plaintiff would provide legal representation and services for defendant and defendant would pay plaintiff hourly attorney fees and costs as incurred and, additionally, a "final bill." Plaintiff's complaint alleged it "has performed all the conditions of" the parties' agreement and defendant "has failed to perform" the parties' agreement. In March 2019, the circuit court of Cook County entered an order granting defendant's motion to dismiss plaintiff's complaint on a ground not originally specified in defendant's motion. In May 2019, the trial court denied plaintiff's motion to reconsider its order granting defendant's motion to dismiss. Plaintiff appealed.

¶ 2 For the following reasons, we reverse.

¶ 3                      I. BACKGROUND

¶ 4 In August 2015, defendant, Stephenson, hired plaintiff, Grund, to represent him in his dissolution proceedings in McHenry County, Illinois. Pursuant to Stephenson's engagement of

Grund to represent him, the parties entered into a written agreement titled "Advance Payment Retainer Agreement" (agreement). Grund attached the agreement to its complaint against Stephenson and expressly made the agreement part of the complaint. The agreement contains the following relevant provisions:

"This document is the Advance Payment Retainer Engagement Agreement between GRUND & LEAVITT, P.C. (G&L), and you, Richard Stephenson, with respect to the payment of your attorney fees and costs in connection with our family law proceedings. ***

* * *

You will be billed against the Advance Payment Retainer for the services and costs set forth in this Agreement, that are rendered to you on a monthly basis as detailed on your monthly invoice;

* * *

G&L agrees to represent you in connection with your family law action pursuant to the terms and provisions set out below.

* * *

You, Richard Stephenson, retain and employ G&L, to act as your attorneys to represent you in all aspects of your family law matter. G&L's representation of you shall commence upon the execution of this agreement and the payment of the retainer in the amount of $100,000 which assures the availability of the services of G&L to represent you in this case. All additional fees and costs incurred on your behalf in connection with the handling of your case shall be subsequently determined and charged, including the costs

and legal fees incurred in any post-decree and/or appeal that you may authorize G&L to take on your behalf or to defend based upon the hourly rate(s) hereinafter set forth and as determined by other provisions herein. G&L will bill against this retainer at the hourly rates for all attorneys, paralegals and clerks employed by G&L, or such other similar personnel as are designated to render services on your case, as set forth in Exhibit A to this Agreement. Specifically, you will receive an itemized bill each month, commencing the first full month after the date of this Agreement, showing the time spent and services provided by each attorney, paralegal or clerk who worked on your case during the prior month. This bill will also show how much of your Advanced Retainer payment has been used through the date of the bill. Each time the retainer is exhausted, you will be required to replenish it. You will continue to receive monthly bills (which must be paid upon receipt), showing the work done and fees charged for the prior month.

* * *

The hourly rates set out on Exhibit A shall remain in effect through December 31 of the year in which this Agreement is dated. G&L reserves the right to increase those hourly rates at any time thereafter. You will be provided at least thirty (30) days notice of the increased rates. Absent a subsequent written agreement to the contrary, you agree to pay those increased hour rate. (sic)

Upon final resolution of the case, G&L shall tender a final bill to you, such final bill taking into account various factors, in addition to the hourly rates, as delineated in the Illinois Rules of Professional Conduct (adopted by the Illinois Supreme Court) as being relevant considerations to be included in arriving at a

fair and reasonable charge. Such factors include the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal services properly, and whether unique expertise of any G&L attorney was utilized; whether acceptance of the particular employment precluded other employment by the firm; the amounts involved and the results obtained; the time limitations imposed by the Client or by the circumstances (including unique time demands); and the experience, reputation, and ability of the lawyer or lawyers performing the services. The final bill will be tendered prior to the entry of a final order or judgment or soon thereafter; and payment thereon shall be due on the entry of judgment or by such date as is otherwise agreed upon in writing. (Any payments to third parties processed subsequent to the final bill—*e.g.*, a court reporters [sic] charge for the final hearing—will be covered in a supplemental statement relative to final costs, or alternatively, bill(s) relative thereto will be sent to you for payment.)

Your case may be resolved by way of settlement. If, however, your case does not settle and trial is requested or required, you agree to provide G&L with a trial retainer sufficient to cover the costs of legal representation to include anticipated attorney fees, costs of experts, court reporting transcripts and other fees and costs usually and reasonably incurred in the preparation and presentation of your case for trial. It is understood that the trial advance payment retainer will be based on your attorney's good-faith estimate as to the amount required as and for fees and costs. If the trial advance payment retainer is insufficient to cover

expenses of a trial, you will be responsible for the payment of any additional fees and costs. ***.

* * *

It is agreed G&L shall utilize a team approach to handling your case, which ordinarily involves the utilization of more than one attorney in the firm. G&L attorneys discuss issues and work together to develop strategies and litigation plans, as necessary. The team approach is further employed for trial, hearings, motions, petitions, depositions, settlement conferences and meetings. The client understands that all attorneys' time used in this process will be chargeable to the client.

* * *."

¶ 5    In September 2017, the dissolution proceedings concluded with a supplemental judgment addressing property, maintenance, and attorney fees and a written memorandum decision. Grund's complaint alleges that "on or about November 28, 2017, *** Plaintiff contacted Defendant with regard to determining a fair and reasonable 'final bill' under said written agreement." The complaint alleges Stephenson "rebuffed" Grund "and thereafter refused to engage Plaintiff further on his matter." Finally, in pertinent part, the complaint alleges that Stephenson "has failed to perform the [agreement] in that he rebuffed Plaintiff's attempt to discuss a fair and reasonable 'final bill' and pay the same in accord with the agreement." The complaint seeks "judgment in [Grund's] favor against *** Stephenson in an amount to be determined at trial, but not less than $50,000, together with costs, interest and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances."

¶ 6    In December 2018, Stephenson filed a motion pursuant to section 619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)) to dismiss Grund's complaint. Stephenson's motion to dismiss argues Grund's complaint should be dismissed pursuant to section 2-615 of the Code (*id.* § 2-615) because

> "1. the agreement is unenforceable as a matter of law, because it does not state a definite and certain price or provide any practical method of determining a price for the final bill;
>
> 2. on its face the agreement gives Grund unmitigated discretion to charge any fee it wants over and above its stated hourly rates, and thus requires the payment of an unreasonable fee in violation of Illinois Rule of Professional Conduct 1.5; and
>
> 3. the complaint fails to allege facts sufficient to support its cause of action: namely how the Plaintiffs performance and the results it obtained for Defendant warranted payment of a bonus above the hourly fees charged."

Stephenson's motion to dismiss argues that Grund's complaint should be dismissed pursuant to section 2-619 of the Code (*id.* § 2-619) because Grund is seeking an unreasonable fee of $9.75 million—a multiplier of 2.61 times the fees actually billed during the course of the engagement—and because seeking to recover fees under such a multiplier in a divorce case is unreasonable, impermissible, and unethical as a matter of law. Stephenson filed a memorandum of law in support of his combined motion to dismiss in which Stephenson asserts that he paid Grund $3.74 million in hourly fees for 8551 hours of professional services, plus costs, and that the final bill requested an additional $9.75 million. Stephenson's attorney also filed a declaration in December 2018, averring (1) that based on billing records attached to Stephenson's motion to dismiss, Grund billed Stephenson $3,737,053.04 in legal fees for an average hourly rate of $437

and (2) that in April 2019, Grund "issued an invoice for $9,775,000 composed of $25,000 in hourly fees and a $9,750,000 line-item that simply said 'Pursuant to Advance Payment Retainer Engagement Agreement dated August 2, 2015.' That $9.75 million demand is 2.61 times the hourly fees billed."

¶ 7 In January 2019, Grund filed an answer and memorandum of law in opposition to Stephenson's motion to dismiss. Grund's memorandum of law asserts that, in November 2017, Grund sent Stephenson a letter with "a request to meet to discuss a fee that is fair and reasonable under the circumstances," to solicit Stephenson's input, and to "arrive at a fair, reasonable resolution of this matter rather than send a bill" as agreed to in the agreement. The memorandum asserts that Grund's attempts to discuss the matter with Stephenson were rebuffed for five months and in April 2018 Grund sent Stephenson a "final bill." The "final bill" was for $9.75 million. Stephenson paid Grund $3.74 million in hourly fees over the course of Grund's representation. After Grund sent the "final bill," Stephenson fired Grund. Grund's memorandum argues, in part, that the "enhancement Provision," [the portion of the agreement under which Grund seeks the amount stated in the "final bill,"] "provided for a reasonable enhancement, taking into account various factors 'delineated in the Illinois Rules of Professional Conduct' [(Ill. R. Prof'l Conduct R. 1.5 (eff. Jan. 1, 2010))] and [this court's decision] in [*In re Marriage of Malec*, 205 Ill. App. 3d 273 (1990)]."

¶ 8 In January 2019, Stephenson filed a reply in support of his combined motion to dismiss. Stephenson's reply argues, in part, that

> "in a situation in which the base fee is determined by the hours worked and the rates charged, the other Rule 1.5 factors [listed in the provision in the agreement at issue in this

appeal] are necessarily already taken into account, and there is no place for an enhancement based on those same considerations."

Stephenson argues in his reply that Grund does not contest "that the fee determined by the hours worked and the hourly rates in this case already takes all of these factors into account."

¶ 9 In March 2019, the trial court issued a written order on Stephenson's motion to dismiss, stating, "Defendant's Motion to Dismiss pursuant to 735 ILCS 5/2-619.1 is GRANTED and Defendant's Complaint is DISMISSED with prejudice." The court's written order acknowledges Stephenson's separate grounds for dismissal under section 2-615 and 2-619 and the parties' arguments in support and opposition thereto. The court's opinion cited Rule of Professional Conduct 1.5(d)(1) of 2010, which states that "[a] lawyer shall not enter into an arrangement for, charge, or collect *** any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof." Ill. R. Prof'l Conduct R. 1.5(d)(1) (eff. Jan. 1, 2010). The court's opinion holds as follows:

> "The Enhancement Provision is contrary to public policy and Illinois's Rules of Professional Conduct because it contains a contingency fee in addition to the hourly-rate fees. The Agreement states 'such final bill taking into account varies factors *** the amounts involved and the results obtained.' The enhancement to the hourly-rate based fee was thus, at least partially, contingent on the on the outcome of the divorce proceeding in McHenry County. Contingent fees are prohibited in domestic relations cases, pursuant to Illinois Supreme Court Rule of Professional Conduct 1.5(d)(1). Accordingly, Defendant's Motion to

Dismiss Plaintiff's Complaint is granted, and Plaintiffs Complaint is dismissed with prejudice.

Pursuant to this Court's and counsel's ethical obligations, due to the violation of Illinois Supreme Court Rule 1.5, this Order will also be sent to the Attorney Registration & Disciplinary Commission."

¶ 10   In April 2019, Grund filed a motion to reconsider, and Stephenson filed a response in opposition to Grund's motion to reconsider. In May 2019, Grund filed a reply in support of its motion to reconsider. On May 22, 2019, the trial court heard argument on the motion to reconsider. Following argument, the court orally ruled as follows:

"I have reconsidered and my ruling will stand, but I will explain to you additionally, perhaps to flesh out a little bit more of the meat of the bones of the decision, as to why the ruling will stand. In this case, there was a set fee arrangement for $750 an hour; that was paid, for approximately $3.6 million or so from a period of 2015 to the end of the case. The language that was contained in the retainer agreement is the language that is contained in Ethical Rule 1.5 as to how you can assess fees. That assumes that when those fees are being calculated that you take into account those matters and that's why you would charge the $750 an hour, and there was nothing to prevent Mr. Grund from setting up a retainer agreement. The man had a stepped-up schedule to acknowledge that, okay, if this litigation goes on a year, then we're at this rate; if it goes on two years, then it's taking a lot of time away from other cases and we're going to increase the rate, and that's how the parties can contract.

What you can't do is charge a fee and then turn around and say, 'I'm going to use the exact same basis that I used to calculate what's supposed to be a reasonable fee and now I'm going to have an enhancement,' as you're calling it, which I have found is contingency and is incremental.

I am not, you know, as well-versed as someone who's practiced in domestic relations for 30-plus years, but I am aware that Domestic Relations started in Chancery, and the reason that there is absolutely no contingency fees in Chancery or Domestic Relations is because you are to look at the equities of the parties, and you cannot have contingency fees with equities of the parties, and I find that this is a contingency fee; it is not permissible.

I do not find your citing to *Malec* as actually on point here. I think this case is distinguishable and I have found it to be distinguishable, and for that reason I have reconsidered and my ruling stands."

¶ 11    The trial court issued a written order on the motion to reconsider, stating only that "the motion for reconsideration is denied and the court's ruling of [March 25, 2019] of dismissal with prejudice and without costs stands."

¶ 12    This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, Grund argues that its attorney fee agreement is not a contingency agreement, and therefore, the trial court erred as a matter of law in dismissing its complaint in contravention of established case law and Rule 1.5 of the Illinois Rules of Professional Conduct of 2010. Grund argues that "enhancement fees and contingent fees [are] distinguished under the Illinois Appellate Court's seminal and controlling opinion of *In re Marriage of Malec*." Grund further

argues that, under *Malec*, "hourly-rate fees may 'be "enhanced" in consideration of the circumstances involved' " (quoting *Malec*, 205 Ill. App. 3d at 287) and that "an enhancement fee *** can cross the line and become a barred contingent fee by linking that enhancement fee to 'certain, particularized results' " (quoting *id.* at 288), but the fee provision at issue in this case does not suffer from that infirmity. Stephenson responds that the trial court "correctly dismissed the complaint on the basis that the final-bill bonus fee amounted to an unlawful contingency" under Rule 1.5(d) by correctly deciding that

> "1) the final bill provision stated that the bonus fee was based in part on the 'amounts involved and the results obtained,' and 2) *** the final bill fee Grund demanded at the conclusion of the matter was 'in addition to' the hourly-rate fees Grund was already paid and which necessarily took account of the same Rule 1.5 factors supposedly used in determining the final bill fee." (Emphasis omitted.)

Stephenson argues that the trial court correctly reasoned that "it was the combination of these two circumstances which made this an unenforceable contingency fee agreement."

¶ 15 Initially Grund correctly notes that the trial court's order did not specify whether the court dismissed Grund's complaint pursuant to section 2-615 or section 2-619 of the Code but that under either section the standard of review for this court is *de novo*. See, *e.g.*, *Calloway v. Chicago Board of Election Commissioners*, 2020 IL App (1st) 191603, ¶ 9 ("We review a dismissal under either section 2-615 or section 2-619 *de novo*."). However, we note that the trial court dismissed the complaint because it violates the Rules of Professional Conduct "and, hence, is unenforceable as a matter of public policy." See *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). Moreover, the factual basis of the trial court's judgment is apparent on the face of Grund's complaint and Grund's own allegations of the substance of the parties'

contract and, specifically, the Enhancement Provision. *Cf. id.* (distinguishing bases of motions pursuant to section 2-619(a)(9) and section 2-615). Thus, the trial court's judgment is based on an affirmative defense. See *id.* Whereas "section 2-619(a)(9) speaks in terms of affirmative matter, not affirmative defenses" (emphases omitted) (*id.*) an affirmative defense is raised in a section 2-615 motion. See also *id.* at 292 ("An affirmative defense may be raised in a section 2-615 motion where the defense is 'established by the facts apparent on the face of the complaint' and no other facts alleged in the complaint negate the defense. 3 R. Michael, Illinois Practice § 27.2, at 492 (1989)." (Emphasis omitted.)). We will treat the trial court's judgment as having been made pursuant to section 2-615 of the Code. See generally *In re Marriage of Hall*, 404 Ill. App. 3d 160, 165 (2010) ("a filing's substance, not its title, determines its character").

> "A section 2-615 motion to dismiss challenges the legal sufficiency of a
> complaint based on defects apparent on its face. [Citation.] In ruling on a section
> 2-615 motion, only those facts apparent from the face of the pleadings, matters of
> which the court can take judicial notice, and judicial admissions in the record may
> be considered. [Citation.] The court must also accept as true all well-pleaded facts
> in the complaint and all reasonable inferences that may be drawn from those facts.
> [Citation.] We review *de novo* an order granting a section 2-615 motion to
> dismiss. [Citation.]" *McGinnis*, 238 Ill. 2d at 291.

¶ 16    Turning to the merits, in *Malec*, appeal was taken from an order denying a "petition for *additional* attorney fees" in a dissolution of marriage case filed by Zurla, one of the attorneys for the petitioner in those dissolution proceedings. (Emphasis added.) *Malec*, 205 Ill. App. 3d at 278-79. The petitioner in the underlying dissolution, Malec, paid a retainer and "was told that the remainder of the fees would be settled, based on performance, at the end of the case." *Id.* at 278.

The parties did not have a written agreement concerning attorney fees. *Id.* At one point in the litigation, the details of which are not pertinent, the petitioner in the dissolution "offered to pay Zurla $1 million if he obtained certain results in his dissolution of marriage." *Id.* at 279. Subsequently, at a meeting to discuss the payment of attorney fees with Zurla, the attorney to whom the petition promised $1 million, Zurla allegedly requested $3 million. *Id.* The petitioner "was incensed and stated that the only fee previously promised was the $1 million fee, contingent upon the achievement of certain results." *Id.* The petitioner further stated at that meeting that he did not owe the $1 million "because those contingencies had not been met." *Id.* Zurla allegedly stated that he was only kidding about the $3 million; petitioner fired Zurla the next day. *Id.* The petitioner and Zurla attempted to negotiate a settlement on the payment of fees but they were not successful. *Id.*

¶ 17    The petitioner had paid Zurla some attorney fees, either directly or through Zurla's former law firm, which had initially represented the petitioner. See *id.* at 278-79. Zurla petitioned the trial court to award him fees in the amount of $1 million in *quantum meruit* or, alternatively, $751,048.75 on a theory of accord and satisfaction. *Id.* at 279. The trial court denied Zurla's petition for fees under either theory and "declined to award any additional fees." *Id.* Zurla appealed. *Id.* Zurla's first argument on appeal was that the trial court "erroneously credited payments made by [the] petitioner against the $1 million fee." *Id.* The *Malec* court addressed "each disputed credit in turn" (*id.*) and concluded (1) there was no evidence the trial court actually made the first alleged credit but if it did "any such credit would have been error" (*id.* at 280); (2) the second alleged credit was proper if the payment to Zurla's former law partner "was in fact for legitimate services *** rendered in the dissolution case" (*id.* at 283); and (3) the trial

court's determination a third credit should apply was not clearly against the manifest weight of the evidence (*id.* at 285).

¶ 18    Next, the *Malec* court turned to Zurla's contention "that the trial court failed to consider the relevant factors in determining the reasonableness of his fee." *Id.* The *Malec* court stated the factors used to determine the reasonableness of an attorney fee, then proceeded, based on Zurla's arguments, to apply the facts of that case to the relevant factors. *Id.* at 285-86. Specifically, the *Malec* court found that the trial court "did consider the complexity of the issues involved" (*id.* at 286) and gave "proper consideration" to the novelty and difficulty of the issues involved in Zurla's representation (*id.*). It then stated that, on remand, the trial court should consider "the preclusion of taking other cases," which the court found was clearly established by the testimony (*id.* at 286-87).

¶ 19    The *Malec* court next addressed Zurla's argument "that the trial court failed to consider the 'results achieved' as a factor in its determination of the reasonableness of the fees." *Id.* at 287. (It is from there the argument "that enhancement fees have been approved by this court and are permissible" and the issues in this appeal emerge. See *id.*) The *Malec* court noted that Zurla's argument concerning the "results achieved" factor

> "is premised on the [trial] court's statement that it '[d]id not believe that either a multiplier or an enhanced fee is ever appropriate in a marital dissolution case.' Zurla relies on *In re Marriage of Barry* (1st Dist. 1988), Nos. 86-1908, 86-2206 (unpublished order under Supreme Court Rule 23). In that order, this court stated that the circuit court's determination that the attorney was not entitled to enhancement fees was supported by the evidence. From that language, Zurla

concludes that enhancement fees have been approved by this court and are permissible." *Id.*

The *Malec* court found that based on "the result obtained in a case," the fee "may be adjusted upward or downward." *Id.* The court also held that "[w]hile we agree with the [trial] court that a multiplier would not be appropriate in a dissolution case [citation], we do not agree that fees may not be 'enhanced' in consideration of the circumstances involved." *Id.*

¶ 20    The *Malec* court turned to the petitioner's argument "that an enhanced fee or one that is based on results achieved is a contingent fee" and that "since contingent fee agreements in dissolution cases are void as against public policy, [the] petitioner should be barred from recovering *any* fees." (Emphasis added.) *Id.* at 287-88. Zurla responded that "since his fee was not based on a percentage of any amount recovered or saved[,] it was not contingent." *Id.* at 288. Zurla cited *Head v. Head*, 505 A.2d 868 (Md. Ct. Spec. App. 1986), which held "that because the results obtained is one of the factors considered in determining the fee, it does not render the fee contingent." *Malec*, 205 Ill. App. 3d at 288 (citing *Head*, 505 A.2d at 874-75). The *Malec* court held that "[i]n Illinois, the results obtained is also a factor to be considered as a guide in determining the reasonableness of a fee. [Citation.] Thus, to the extent that *Head* stands for the proposition that consideration of that factor does not convert the fee into a contingency fee, we agree." *Id.* The court concluded that "while Zurla's fee arrangement would *not* have been contingent *because of the consideration to be given to the results achieved factor*, we do believe that it was contingent for another reason." (Emphases added.) *Id.*

¶ 21    The *Malec* court began with the definition of a contingent fee. At that time,

> "Canon 2-106 of the Code of Professional Responsibility define[d] a contingent
> fee agreement in the following manner:

'[A]ny agreement for the provision of legal services by a lawyer under which the amount of the lawyer's compensation is contingent in whole or in part upon the successful accomplishment (by settlement or litigation) of the subject matter of the agreement, regardless of whether the fee is established by formula or in fixed amount.' 107 Ill. 2d R. 2-106(c)(1)." *Id.*

See also *Hernandez v. New Rogers Pontiac, Inc.*, 332 Ill. App. 3d 461, 465 (2002). "Under this definition, a contingent fee agreement is contractual in nature, as it is an agreement whereby the lawyer provides legal services to a client in consideration for payment upon successful completion thereof." *Id.*

¶ 22    Based on the petitioner's offer "to pay Zurla $1 million if certain, particularized results were obtained," and Zurla's argument "that since those results were achieved, he should be paid the $1 million," the court held the "agreement to be characteristic of contingent agreements as they are defined in the Code of Professional Responsibility." *Malec*, 205 Ill. App. 3d at 288. The *Malec* court rejected Zurla's request for recovery of the $1 million in *quantum meruit* and his argument based on "other jurisdictions wherein recovery has been allowed." *Id.* As to the latter, the court held that "the mere existence of a contrary rule in foreign jurisdictions does not persuade us toward repudiation of so well established a rule as the one here in Illinois." *Id.* at 289. As to the former, the *Malec* court, relying on its earlier decision in *Licciardi v. Collins*, 180 Ill. App. 3d 1051, 1061 (1989), rejected Zurla's argument. In *Licciardi*, the court held that " 'as long as an attorney's services are employed with respect to the division of marital property, the rule bars contingent fees therefor.' " *Malec*, 205 Ill. App. 3d at 289 (quoting *Licciardi*, 180 Ill. App. 3d at 1061). "The policy against permitting contingent fees in divorce actions is based on a concern that if the attorney has a financial interest in the outcome of the case,

- 16 -

reconciliation of the parties will be either deterred or prevented." *Id.* at 290. The *Malec* court refused to depart from *Licciardi*, holding "[o]ur interest in the preservation of the marital relationship is so strong as to outweigh our concerns that the party may have been unjustly enriched." *Id.* at 289. "Thus, under the rule of *Licciardi*, which is firmly rooted in our public policy and based on our canon of ethics, we conclude that Zurla is precluded, under any theory, from recovering on the $1 million contingency fee agreement." *Id.* at 289.

¶ 23    Nonetheless, the *Malec* court held that there was no reason Zurla should be barred from recovery of any "additional fee due him under the fee arrangement which was originally agreed upon between [the] petitioner and the [law] partnership." *Id.* at 289-90. In *Malec*, that

"original agreement for fees was entered into prior to the filing of the petition for dissolution of marriage, and its terms were not conditioned on any particular result in the case. Thus, since the attorneys, at the time they entered into the original fee agreement with petitioner, had no interest in the outcome of the case, the agreement is not tainted by any illegality and Zurla may properly seek to recover fees based on its terms." *Id.* at 290.

The *Malec* court held that if the trial court had failed to consider "the results achieved" because it believed "that to do so would be an improper 'enhancement,' " the trial court erred. *Id.* The *Malec* court directed the trial court to give proper consideration to "the results achieved" to determine whether Zurla was "entitled to any additional fees" which "must, nonetheless, satisfy the reasonableness requirement." *Id.*

¶ 24    Notably for purposes of this appeal, the *Malec* court did not state whether, under the original fee agreement entered into with the partnership, Zurla might be entitled to "additional fees" in the form of an increased hourly rate or an additional flat amount. See *id.* The *Malec* court in fact never discussed whether the "enhancement" it discussed would be an

"enhancement" in the form of an increased hourly rate, billing for more hours, or a flat amount. See *id.* at 287-90. In connection with Zurla's argument that the trial court erred in finding no evidence supported his hourly rate, the *Malec* court noted the testimony of one of plaintiff's experts, who is also the fee petitioner in this case. "It was David Grund's, one of Zurla's experts, belief that a reasonable hourly rate would be $275 an hour with the multiplier applied as an enhancer." *Id.* at 293. The *Malec* court did not address the assertion there should be a "multiplier applied as an enhancer" specifically in connection with either the trial court's finding that there was no evidence offered to support Zurla's hourly fee or the remand for the trial court to determine whether Zurla is "entitled to any additional fees." See *id.* at 290-93. However, we acknowledge that, in addressing Zurla's argument, the Illinois Supreme Court had yet to address "the trial court's conclusion that there should be separate rates for office time and for court time." The *Malec* court did note that "Illinois case law is clear that when fees are granted in dissolution cases, it is based upon a separate hourly rate for court time and office time." *Id.* at 293 (citing *Christian v. Christian*, 69 Ill. App. 3d 450 (1979)). Nonetheless, the *Malec* court did not carry that finding into the grounds for holding that Zurla might be entitled to additional attorney fees under the parties' agreement. Additionally, Zurla argued that he should be permitted to recover $751,048.75 "of the $1 million fee" based on a theory of accord and satisfaction because the petitioner allegedly verbally agreed to pay that sum to settle the parties' fee dispute. *Id.* at 294. The *Malec* court held that its "determination that Zurla may recover any reasonable fees obviates the need *** to consider his accord and satisfaction argument." *Id.*

Nonetheless, the court found there was no accord and satisfaction, but not because there was "no agreement" to a $1 million flat fee. See *id.* at 294-95.[1]

¶ 25    Ultimately, the *Malec* court held that "the trial court failed to give due consideration to all of the necessary factors in determining whether Zurla was entitled to additional fees" and remanded for the trial court to "give careful consideration" to the factors discussed in the case to "determine a reasonable fee for necessary services rendered." *Id.* at 295. The *Malec* court did not say the additional reasonable fee had to be applied in the form of an increased hourly rate or imply that further review of Zurla's performance or time records might result in finding more time spent on the case. See *id.* at 287-90. Rather, the *Malec* court simply held that Zurla was entitled to recover any reasonable fees due him under the parties' fee arrangement. See *id.* at 289-90 ("even though we have determined that the $1 million fee agreement was illegal, we see no reason to bar Zurla recovery of any additional fees due him under the fee arrangement"). However, the fee arrangement may not be "conditioned on any particular result" in the case or create a financial interest in the outcome. *Id.* at 290.

¶ 26    In this case, the parties, like the parties in *Malec*, entered a fee agreement providing for a "final bill" that would include a fee "in addition to the hourly rates" that considered "the amounts involved and the results obtained" prior to the filing of the petition for dissolution of marriage. See *id.* The question becomes whether that "final bill" portion of the fees the parties agreed to was "conditioned on any particular result in the case." See *id.* In this case, the trial court found

_____

[1]"First, there was apparently no meeting of the minds. Petitioner intended that Vrdolyak's promise of nondisclosure would be a part of the agreement. However, Vrdolyak had no knowledge that he was even to be included in the settlement agreement. Additionally, the agreement was never signed. While the parties negotiated on the terms of the settlement, there was neither mutual assent nor execution of the agreement. Finally, there was no tender of the agreed-upon amount." *Malec*, 205 Ill. App. 3d at 294-95.

that it was so conditioned because the "final bill" was "at least partially, contingent on the outcome of the divorce proceeding." The only indication of why the trial court believed the final bill was partially contingent on the outcome of the divorce proceeding is its concurrent finding that the final bill is to take "into account *** the amounts involved and the results obtained." If that were the basis of the trial court's judgment it is, clearly, erroneous. Consideration of the result achieved in a particular case is not only permissible but required under *Malec*. See *id.* ("We are unable to determine from the record what consideration the trial court gave to the results achieved in this case. However, any determination which excluded consideration of that factor, based on the belief that to do so would be an improper 'enhancement,' was error."). Moreover, consideration of that factor is required by rule. See Ill. R. Prof'l Conduct R. 1.5(a)(4) (eff. Jan. 1, 2010) ("the amount involved and the results obtained").

¶ 27      In its oral ruling, the trial court expressed a different reason for denying Grund recovery under the Enhancement Provision: that the "final bill" was in addition to its hourly fees but based on the same factors used to determine the hourly fee. However, the trial court cited no authority for that limitation on attorney fees in dissolution proceedings. Stephenson argued on appeal that the attorney fees were limited (1) by consideration of the amounts involved and the results obtained and (2) because the final bill was "in addition to" the hourly rate fees." However, Stephenson has not cited any rule or authority so limiting the parties' ability to contract for a reasonable attorney fee except for, purportedly, *Malec* itself. To that end, Stephenson argues that *Malec* only permits consideration of the results obtained in the *absence* of an hourly fee arrangement. Specifically, Stephenson argues that "*Malec* only held that the results achieved, along with the other relevant Rule 1.5 factors, could be considered without turning the agreement

into a contingency where the parties had not otherwise agreed to a fee in advance." (Emphasis in original.)

¶ 28    We reject Stephenson's characterization of the scope of the holding in *Malec*. First, Stephenson's interpretation is contrary to the plain language of Rule 1.5(d), which does not contain Stephenson's purported limitation on the applicability of the Rule to determinations of when a fee is reasonable—including when the fee is in addition to other fees. "In Illinois, the result obtained is also a factor to be considered as a guide in determining the reasonableness of a fee." *Malec*, 205 Ill. App. 3d at 288. "We interpret the Illinois Rules of Professional Conduct in the same manner as statutes." *In re Marriage of Stephenson*, 2011 IL App (2d) 101214, ¶ 26. "We may not depart from the plain statutory language by reading into a statute exceptions, limitations, or conditions not expressed by the legislature." *In re Marriage of Zamudio & Ochoa*, 2019 IL 124676, ¶ 15.

¶ 29    Second, Stephenson's position is belied by the facts in *Malec*, in which the court detailed what the petitioner and Zurla had "otherwise agreed to" with regard to the fees the petitioner in that case paid to Zurla *before* the parties allegedly agreed to the $1 million fee or any others. See *Malec*, 205 Ill. App. 3d at 279.

> "Law and public policy demand that competent parties be free to contract with one another. [Citation.] Parties to a contract are free to choose any terms that are not against public policy and do not contravene some positive rule of law. [Citation.] Parties are bound to the contracts they make, and the court has a duty to construe and enforce them." *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 284 (2001).

The *Malec* court expressly *disagreed* with the proposition that "fees may not be 'enhanced' in consideration of the circumstances involved." *Malec*, 205 Ill. App. 3d at 287.

¶ 30 Stephenson implies on appeal that the impermissible "particular result" in this case is the securing of a dissolution. Specifically, Stephenson argues "a divorce lawyer could avoid the prohibition of Rule 1.5(d) by simply making its fee contingent on a general outcome rather than a specific one," which would be "contrary both to the letter and spirit of the ethical rules." However, Stephenson's interpretation would constitute an exception to the rule that the reasonableness of a fee is determined in part by the results achieved that in fact swallows the rule. Under Stephenson's interpretation that exception would arise when the parties in any way expressly, rather than impliedly "by rule," contemplate the ultimate "results" desired from the representation when agreeing to the attorney fee. Regardless, in this case, given the context of the language of the agreement, consideration of "the results obtained" appears to mean as that term is used in Rule 1.5(a), which is permissible as a matter of law. Because the trial court failed to consider the parties' agreement it did not address the meaning of the language in the parties' agreement or whether that question has any bearing on the reasonableness or alleged contingent nature of the fees sought under the Enhancement Provision. The trial court did not consider whether Grund was entitled to any additional fees under the final bill provision at all. We express no opinion at this time on these unanswered and unbriefed questions. See, *e.g.*, *Puffer-Hefty School District No. 69 v. Du Page Regional Board of School Trustees of Du Page County*, 339 Ill. App. 3d 194, 200 (2003) ("If the issue is one of law and is fully briefed and argued by the parties, this court may consider the issue for the first time on appeal."). At this stage of the proceedings, the trial court has found the provision for a "final bill" was contingent (1) because it considered "the results obtained" but not any particular result in the case or (2) because it

considered the results obtained and was in addition to Grund's hourly fees that already considered the results obtained. Neither is a valid basis to reject the parties' original fee agreement.

¶ 31    Although the rules do provide limitations on the fees attorneys may charge (see, *e.g.*, *Malec*, 205 Ill. App. 3d at 285), Stephenson has cited no Illinois authority for the proposition that one of those limitations is that the Rule 1.5(a) factors may not be considered in connection with a fee that is in addition to an hourly fee, even a hefty one. Stephenson's foreign authorities ostensibly to the contrary are wholly unpersuasive in this court. Like the *Malec* court, we believe that "the mere existence of a contrary rule in foreign jurisdictions does not persuade us toward repudiation of so well established [rules] as the one[s] here in Illinois." *Id.* at 289. The trial court in this case should have given consideration to the parties' agreement expressed in a written contract for a final bill, giving "proper consideration to the relevant factors, *including the results achieved*" to determine whether Grund "is entitled to any *additional* fees" beyond the hourly fees that "must, nonetheless, satisfy the reasonableness requirement." (Emphases added.) See *id.* at 290. In failing to do so, based on our *de novo* review, we hold the trial court erred in granting Stephenson's motion to dismiss.

¶ 32    Stephenson asks this court to affirm the trial court's judgment granting his motion to dismiss on the alternative grounds that (1) the final bill provision is unenforceable because it does not specify a key term and said key term is "to be determined by one party weighing subjective factor" or (2) the final bill provision is unreasonable and unenforceable—but for the same reasons it is allegedly unenforceable under Rule 1.5(d), because "the Rule 1.5 factors it purports to consider were already subsumed within Grund's hourly fee billing" (emphasis omitted) and, in essence, because Grund separately charged Stephenson for, and he paid,

significant hourly bills. We believe the better course is to remand to the trial court. On remand the trial court is to consider the motion to dismiss in its entirety; including but not limited to the alternative grounds raised in the motion concerning the specification of a key term, the method of determining that key term, and the reasonableness and enforceability of the final bill given the factors it is to consider and Stephenson's payment of significant hourly bills based on those factors. See generally *General Auto Service Station, LLC v. Garrett*, 2016 IL App (1st) 151924, ¶ 26 ("because we believe it is appropriate for the trial court to resolve these issues in the first instance, we remand for the trial court's consideration").

> "Unlike findings in a fee petition case, which rest in the sound discretion of the trial judge, the reasonableness of attorney fees in a common law breach of contract action presents a question to be resolved by the trier of fact, following a fair and impartial trial. [Citation.] In civil actions brought by attorney-plaintiffs to recover compensation for professional services performed under an alleged contract, the usual rules governing breach of contract actions apply because '[t]he liability to pay for legal services stands upon the same footing as other agreements.' [Citation.] *** 'It is not the province of this court to substitute its judgment for that of a [trier of fact]' in a breach of contract action seeking attorney fees ***. [Citations.]" *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 597 (2000).

¶ 33    Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

¶ 34                                    III. CONCLUSION

¶ 35    For the foregoing reasons, the circuit court of Cook County is reversed and the cause

remanded for further proceedings.

¶ 36    Reversed and remanded.

**No. 1-19-1074**

| | |
|---|---|
| **Cite as:** | *Grund & Leavitt, P.C. v. Stephenson*, 2020 IL App (1st) 191074 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-11283; the Hon. Margaret A. Brennan, Judge, presiding. |
| **Attorneys for Appellant:** | David I. Grund and Marvin J. Leavitt, of Grund & Leavitt, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Chris Gair, Thomas R. Heisler, and Ryan P. Laurie, of Gair Eberhard Nelson Dedinas Ltd., of Chicago, for appellee. |
| **Amicus Curiae:** | Donald C. Shiller, of Schiller DuCanto & Fleck, LLP, of Chicago, for *amicus curiae* Illinois Chapter of the American Academy of Matrimonial Lawyers. |