2022 IL App (1st) 210048-U
Order filed: February 17, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-0048

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| GALLERY-LAUDERDALE, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 L 14214 |
| | ) | |
| AMY DALEO; COHON RAIZES & REGAL, LLC; | ) | Honorable |
| KAREN WITT; MICHAEL PALMIERI; and | ) | Michael F. Otto, |
| SPECIALTY INDUSTRIES II, LLC, | ) | Judge, presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Dismissal of plaintiff's first amended complaint is affirmed where plaintiff did not adequately plead damages, a necessary element of each of its causes of action.

¶ 2    Plaintiff-appellant, Gallery-Lauderdale, LLC, appeals from the dismissal of its first amended complaint against defendants-appellees, Amy Daleo, Cohon Raizes & Regal, LLC (Cohon), Karen Witt, Michael Palmieri, and Specialty Industries II, LLC. For the following reasons we affirm.

¶ 3    Plaintiff filed its initial complaint in December 2019. After that complaint was dismissed—without prejudice and with leave to replead—the operative first amended complaint was filed on September 9, 2020.

¶ 4    Therein, plaintiff generally alleged that it was an Illinois limited liability corporation whose sole members were Jenell Sisk (with a 51% interest) and defendant Witt (with a 49% interest). Sisk was the manager of plaintiff, and for all relevant matters she had the exclusive right to manage plaintiff's business and affairs. These allegations were supported by a copy of plaintiff's articles of incorporation and operating agreement, both of which were attached as exhibits to the complaint. On or about March 19, 2009, plaintiff purchased a condominium unit in the Gallery One Hotel located in Fort Lauderdale, Florida, as reflected in a warranty deed also attached as an exhibit to the complaint. Plaintiff allegedly earned income via short-term rentals of the condominium at the hotel, though no certain amount of income was guaranteed.

¶ 5    In early November 2019, and on behalf of plaintiff, Sisk entered into a listing agreement for the condominium with a real estate broker located in Fort Lauderdale. Pursuant to the listing agreement attached as an exhibit to the complaint, the agreement was to last until May 4, 2020. The condominium was to be offered for sale at $224,900, although the agreement only required the broker to make "efforts" to sell the condominium and both plaintiff and the broker specifically acknowledged that "this Agreement does not guarantee a sale."

¶ 6    Prior to the execution of the listing agreement, a $507,500 judgment was entered in a separate lawsuit in favor of Palmieri and Specialty Industries, LLC and against several defendants,

including Sisk. On September 11, 2019, a charging order was entered in that lawsuit to satisfy this judgment, imposing a lien on Sisk's distributional interest in plaintiff.[1]

¶ 7    On November 22, 2019, Daleo, an attorney employed by Cohon, sent a letter to the broker, a copy of which was attached to the complaint. In that letter, Daleo informed the broker that Cohon represented Palmieri and Witt. Daleo also provided that Witt had a 49% interest in plaintiff and disputed Sisk's authority to manage plaintiff, that Sisk's authority to manage plaintiff was at issue in yet another pending lawsuit, and that Witt must approve any sale of the condominium. The letter also discussed the charging order and indicated that pursuant thereto any proceeds from the sale of the condominium must be turned over to Palmieri and Specialty Industries, LLC. According to the complaint, the broker cancelled the listing agreement in response to this letter, but only after he had prepared a detailed listing, obtained marketing photos, and scheduled at least two showings of the condominium.

¶ 8    Finally, the complaint alleged that the number of condominium sales and the price of those sales in the county where the condominium was located rose, respectively, 13.4% and 12.5% in 2019. In addition, in 2019 the median time to contract for condominiums was 52 days, the median number of days between the listing and closing date was 89 days, and the median sale price was 94.3% of the listing price. However, during the second quarter of 2020, there was a 43.5% decrease in sales of condominiums in that county.

¶ 9    Based on these allegations, plaintiff's complaint raised claims against the defendants for intentional interference with contract, intentional interference with business relations and civil

---

[1] "A charging order constitutes a lien on a judgment debtor's distributional interest and requires the limited liability company to pay over to the person to which the charging order was issued any distribution that would otherwise be paid to the judgment debtor." 805 ILCS 180/30-20 (West 2018).

conspiracy to commit one or both intentional interference torts. With respect to damages, plaintiff alleged that it had:

"suffered damages as a direct and proximate result of [the] unjustified and intentional interference with the Listing Agreement. Specifically, Gallery-Lauderdale has continued to incur expenses on Unit, including real estate taxes and management fees. Gallery-Lauderdale also lost the opportunity to sell the Unit during a time the real estate market where the Unit is located while market conditions were very good. If the Unit were to be placed on the market in today's market, the expected sale price would be significantly lower. By not being able to sell the Unit during a time of good market conditions, Gallery-Lauderdale lost access to the funds from the sale. The precise amount of damages suffered by Gallery-Lauderdale requires the opinion of experts, but Gallery-Lauderdale estimates that its damages are at least $200,000.00."

Plaintiff also alleged that it was entitled to punitive damages and an award of attorney fees.

¶ 10 The defendants filed a motion to dismiss the complaint, pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2020). Among the arguments raised in the motion was that plaintiff had failed to properly plead the required element of damages in support of any of the three causes of action. After the motion had been fully briefed and following a hearing on the matter, the trial court dismissed plaintiff's complaint with prejudice "based on Defendants' arguments raised relating to damages." Plaintiff timely appealed.

¶ 11 "A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face." *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). "The proper inquiry is whether the well-pleaded facts of the complaint, taken as true and construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon

which relief may be granted." *Loman v. Freeman*, 229 Ill. 2d 104, 109 (2008). All well-pleaded facts must be taken as true. *Unterschuetz v. City of Chicago*, 346 Ill. App. 3d 65, 68-69 (2004). However, "a court cannot accept as true mere conclusions unsupported by specific facts." *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Exhibits attached to the complaint are considered part of the pleadings. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 431 (2004). We review an order granting a section 2-615 dismissal *de novo*. *McGinnis*, 238 Ill. 2d at 291.

¶ 12    To survive dismissal under section 2-615, a complaint must allege facts that set out all the essential elements of a cause of action. *Visvardis v. Ferleger*, 375 Ill. App. 3d 719, 724 (2007). A party's failure to establish an essential element of their cause of action defeats their claim. *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 354 (1992). Here, proximate, resulting damages are an essential element of each of plaintiff's causes of action. See *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989) (To establish a claim of tortious interference with a contract, the plaintiff must prove damages); *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 218 (2007) (same with respect to tortious interference with business relations); *Reuter v. MasterCard International, Inc.*, 397 Ill. App. 3d 915, 927 (2010) (same with respect to civil conspiracy).

¶ 13    With respect to plaintiff's intentional interference claims, the:

"interest protected in a tortious interference case is the reasonable expectation of economic advantage. [Citation] Thus, the damages recoverable when a plaintiff proves intentional interference *** include pecuniary loss of the benefits of the contract; actual harm to reputation, if they are reasonably to be expected to result from the interference (citation); and consequential losses for which the interference is the legal cause. [Citation.] Punitive

damages are recoverable where the plaintiff has specifically alleged ' "actual malice," defined as "a positive desire and intention to injure." ' " *Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300, 313 (1995).

However, "a plaintiff is not entitled to recover damages that are remote, speculative, or uncertain." *Union Tank Car Co. v. NuDevco Partners Holdings, LLC*, 2019 IL App (1st) 172858, ¶ 27. Furthermore, Illinois has long held that an award of punitive damages in the absence of actual or compensatory damages is improper. *Mitchell v. Elrod*, 275 Ill.App.3d 357, 362 (1995) (and cases cited therein).[2]

¶ 14    Here, we find the trial court properly dismissed the complaint on the basis that the plaintiff did not properly plead damages. Even assuming plaintiff properly pleaded all the other required elements, plaintiff's complaint specifically claims damages purportedly resulting from defendants' interference with a listing agreement that only required the broker to make "efforts" to find a buyer and specifically did "not guarantee a sale." The complaint did not assert that the broker had identified a buyer or that a sales contract for the condominium had ever been executed.

¶ 15    Furthermore, while the complaint compares the purportedly favorable real estate market in 2019 with a purportedly less favorable market in the second quarter of 2020, the listing agreement at issue here was both executed and terminated over a matter of weeks in late 2019. Nowhere in the complaint does plaintiff explain why the condominium could not have been sold by another broker in the interim. Nor does the complaint specifically claim that prices for condominiums in the area were lower in the second quarter of 2020, only that the number of sales was lower. Finally,

---

[2] The same measure of damages applies to plaintiff's civil conspiracy claim predicated on the underlying tortious interference claims, as "conspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 59.

we note that the complaint specifically alleged that plaintiff was damaged because the sale price would be lower at the time the complaint was filed in September 2020. There are no factual allegations in the complaint regarding the state of the real estate market at that time.

¶ 16    Ultimately, we agree with the defendants and the trial court that the allegations of damages in plaintiff's complaint are either mere conclusions unsupported by specific facts (*City of Naperville*, 2012 IL 113148, ¶ 31) or too remote, speculative, or uncertain to support its causes of action (*Union Tank Car Co.*, 2019 IL App (1st) 172858, ¶ 27). This conclusion applies both to plaintiff's claim that it would receive a lower purchase price in any ultimate sale of the condominium and to plaintiff's claim that it has been damaged by continuing to incur real estate taxes and management fees. As such, plaintiff's complaint was properly dismissed.

¶ 17    In so ruling, we necessarily reject plaintiff's reliance upon several cases cited in its briefs. None of the cases cited by plaintiff involve the circumstances presented here *i.e.*, damages purportedly resulting from the alleged tortious interference with a real estate listing agreement that did not guarantee a sale. See, *e.g.*, *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 225 (2006) (claim for lost profits resulting from legal malpractice); *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 309 (1987) (claim for lost profits resulting from breach of contract); *TAS Distribution Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 627 (7th Cir. 2007) (same); *1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 1 (damages for breach of executed real estate sales contract).

¶ 18    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 19    Affirmed.