**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210369-U

Order filed June 24, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| LEON J. MODROWSKI, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois |
| | ) | |
| | ) | Appeal No. 3-21-0369 |
| v. | ) | Circuit No. 19-LM-952 |
| | ) | |
| STEPHEN L. RICHARDS, | ) | Honorable |
| | ) | Barbara N. Petrungaro, |
| Defendant-Appellant. | ) | Judge, Presiding |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Schmidt and Hauptman concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   Trial court did not err when it denied defendant's motion to dismiss breach of contract action and found defendant liable following a bench trial. Trial court erred when it excluded hearsay statements from the trial but the error was harmless because the statements would not have changed the outcome of the trial.

¶ 2     Following a bench trial, the trial court ruled in plaintiff's favor and entered a $5000 judgment against defendant for his breach of contract. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Plaintiff Leon J. Modrowski and defendant Stephen L. Richards entered into a contract whereby Richards was to file a postconviction petition on behalf of Leon's son, Paul Modrowski, who was serving a natural life sentence of imprisonment in the Illinois Department of Corrections (IDOC). The contract provided that Leon would pay Richards $15,000 to represent Paul in postconviction proceedings, including drafting a postconviction petition; that Richards would file the petition within one year of the date of payment; and that if the petition was not filed within a year and the delay was not attributable to Paul, either Leon or Paul could terminate the contract and demand a return of the $15,000. Both Leon and Richards signed the contract and Leon paid Richards $15,000 on April 19, 2016. Paul signed the contract with Richards on May 5, 2016.

¶ 5    Richards did not file the postconviction petition by April 19, 2017. A forensic DNA motion in which Richards was participating and had been pending was decided on April 27, 2017, presumably unfavorable to Paul. Richards then worked on a motion for leave to file a successive postconviction petition and the petition itself. He sent a draft petition to both Leon and Paul in November 2017. Paul never verified the petition. Leon demanded a return of the funds in November 2018.

¶ 6    Leon filed a complaint for breach of contract on April 29, 2019, alleging that Richards failed to file the postconviction petition by the date required in the contract. Richards moved to dismiss the complaint, arguing it failed to state a claim on which relief could be granted. 735 ILCS 5/2-615 (West 2018). The trial court denied Richards's motion to dismiss and Richards filed an amended answer and asserted affirmative defenses. Leon moved for summary judgment and attached to his motion affidavits from Leon and Paul. Leon's affidavit averred he demanded a return of the money in April 2019, while Paul attested that he made an undated demand. The trial

court denied the motion for summary judgment. The parties participated in an arbitration hearing, but Leon rejected the award of $2500.

¶ 7 A bench trial took place in June 2021. Leon testified that his son, Paul, was incarcerated in the IDOC. He identified the contract with Richards and explained that both he and Richards drafted it. He paid Richards $15,000. Richards did not timely file the postconviction petition as required by the contract. He received a draft of the petition from Richards in November 2017. At that time, he fired Richards. In November 2018, Leon demanded Richards return the $15,000. Richards mailed him a check for $10,000 sometime after the complaint was filed. He cashed the check but was still owed $5000. On cross-examination, Leon acknowledged he was not aware of every conversation or every agreement between Paul and Richards that took place from April 2016 to November 2017. He was aware the forensic DNA motion was pending when he signed the contract with Richards. He could not recall whether he fired Richards before or after receiving a draft of the postconviction petition.

¶ 8 Richards testified in his defense. He was an attorney and sole proprietor of a law firm. The firm handled mainly criminal cases, with the majority being murder cases at the trial, appellate and postconviction levels. It was his understanding that a postconviction petition had been filed for Paul in the late 1990's, apparently without Paul's approval or certification. A petitioner's certification was required for both initial and successive postconviction petitions. At the time he and Leon entered into the contract, a forensic DNA motion was pending in Paul's case, which could have led to newly discovered evidence that would aid Paul's postconviction case. The motion was determined in April 2017 and was inconsistent with the allegations in the postconviction petition.

3

¶ 9        Richards was asked if Paul ever agreed to pause the postconviction petition while the forensic DNA motion remained pending. Leon objected on hearsay grounds. Richards responded the statement was admissible under Illinois Supreme Court Rule 801 as a party admission. See Ill. R. Evid. 801(d)(2)(F) (eff. Oct. 15, 2015). The trial court sustained Leon's objection and Richards made an offer of proof. The proffer indicated that Richards received a letter from Paul in December 2018, which instructed him to return $10,000 to Leon and keep the remaining $5000 and negated that a breach of contract occurred. According to Richards, Paul never fired him between April 19, 2016, and April 27, 2017, nor did he tell Richards to stop working on his behalf.

¶ 10       Richards continued that once the forensic DNA motion concluded, he began diligently drafting the motion for leave to file a successive postconviction petition and the petition itself. The petition included 12 claims. He invested 70 hours of work into the motion and petition. He sent both documents to Paul in November 2017. Paul did not verify the petition. He sent the petition before Paul fired him. Paul fired him within a couple months of receiving the draft petition. On cross-examination, Richards clarified Leon fired him around February 2018.

¶ 11       The trial court issued a ruling by mail, finding in favor of Leon and entering judgment against Richards in the amount of $5000. The court found the contract was valid and Richards breached it. It rejected Richards's assertions it was a legal malpractice case and that *laches* applied. Richards appealed.

¶ 12                                    II. ANALYSIS

¶ 13       Richards raises three issues on appeal. He argues the trial court erred when (1) it denied his motion to dismiss, (2) in finding him liable, and (3) in excluding certain "admissions" made by Paul. Richards filed the only brief in this case. Because the record is simple and we are able to

determine the issues without Leon's brief, we will consider the merits of the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 14     We turn first to Richards's argument that the trial court erred when it denied his motion to dismiss Leon's complaint. Richards characterizes Leon's complaint as a legal malpractice action and contends that it failed to allege that Paul was actually innocent or that his conviction had been overturned, allegations he contends are statutorily necessary to sustain a legal malpractice action in a criminal case. He submits that because those necessary allegations are absent from the complaint, it failed to state a claim upon which relief could be granted and should have been dismissed.

¶ 15     A section 2-615 motion to dismiss alleges that the complaint is insufficient on its face. 735 ILCS 5/2-615 (West 2018). When deciding whether a complaint is legally sufficient, the court accepts as true all well-pleaded facts and all reasonable inferences that may come from those facts. *K. Miller Construction Co., Inc. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). "The critical inquiry in deciding upon a section 2-615 motion to dismiss is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). A dismissal is appropriate under section 2-615 only where there is no set of facts the plaintiff may prove that would entitle him to relief. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). This court reviews a trial court's decision to deny a section 2-615 motion to dismiss *de novo*. *K. Miller Construction Co., Inc.*, 238 Ill. 2d at 291.

¶ 16     In the complaint, Leon alleged that he and Richards entered into a contract on April 19, 2016, whereby he paid $15,000 to Richards for him to file a postconviction petition on behalf of

Paul; the petition was to be filed within one year of the date of payment, and if it was not, Richards would refund the $15,000 on demand; the postconviction petition was not filed by April 19, 2017, without explanation; Leon demanded $15,000 but Richards did not return it; and Leon suffered $15,000 in damages. We note that after the complaint was filed, Richards returned $10,000 to Leon, leaving only $5000 in dispute.

¶ 17     We find the allegations in the complaint stated a cause of action for breach of contract. To state a claim for breach of contract, Leon was required to plead (1) a valid and enforceable contract existed between him and Richards, (2) he performed under the contract, (3) Richards breached the contract, and (4) was he was damaged by the breach. See *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 85. The complaint alleged (1) a valid and enforceable contract existed between Leon and Richards, (2) that Leon paid $15,000, (3) that Richards failed to file a postconviction petition within one year of payment; and (4) Leon suffered $5000 in damages. Accordingly, we find the trial court did not err when it denied Richards's motion to dismiss the complaint.

¶ 18     We reject Richards's argument that Leon was required to allege that Paul was actually innocent or that his conviction had been overturned in order to sustain his cause of action. See *Kramer v. Dirksen*, 296 Ill. App. 3d 819, 822 (1998) ("a plaintiff must prove his innocence before he may recover for his criminal defense attorney's malpractice"). As the trial court found, this case is a breach of contract action, not a legal malpractice claim. No attorney-client relationship existed between Leon and Richards. See *id.* at 821 (elements of legal malpractice claim include the existence of an attorney-client relationship establishing a duty on the part of the attorney).

¶ 19     The next issue is whether the trial court erred when it found Richards liable and entered a $5000 judgment against him and in favor of Leon. Richards argues as above that the complaint

failed to allege Paul was innocent or that his conviction was overturned. Richards further argues that the court's decision was not supported by the evidence where Leon did not prove the failure to timely file the complaint was not attributable to Paul. Lastly, Richards argues the trial court erred in finding *laches* did not apply to bar the complaint.

¶ 20      " 'The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.' " *Sherwood Commons Townhome Owners Ass'n. v. DuBois*, 2020 IL App (3d) 180561, ¶ 28 (quoting *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 27 (2001)). When interpreting a contract, the primary goal is to give effect to the intent of the drafters by interpreting the contract as a whole and giving plain and ordinary meaning to its terms. *Midway Park Saver v. Sarco Putty Co.*, 2012 IL App (1st) 110849, ¶ 13. The interpretation of a contract is subject to *de novo* review but whether a breach of contract took place is an issue of fact, which this court will not overturn unless against the manifest weight of the evidence. *Sherwood Commons Townhome Owners Ass'n*, 2020 IL App (3d) 180561, ¶ 28. "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002).

¶ 21      We find no merit in Richards's arguments. As discussed above, because the complaint did not allege legal malpractice, it was not required to assert Paul was innocent. Although Richards interpreted the complaint as alleging a legal malpractice claim to support his section 2-615 argument, he now looks to the elements of a breach of contract claim to assert that he did not breach the contract and, thus, the trial court erred in entering judgment against him. According to Richards, his failure to file the postconviction petition was due to Paul's refusal to verify the

7

petition. See 725 ILCS 5/122-1(b) (West 2020) (petition shall be verified by affidavit). Richards submits that because the delay was attributable to Paul, Paul breached the contract and he did not.

¶ 22 The facts do not support that delay in Richards's completion of the postconviction petition was attributable to Paul. It is undisputed that Richards sent Paul a draft of the postconviction petition in November 2017. The terms of the contract required Richards to file the petition by April 19, 2017. Whether Paul verified the petition after Richards sent it to him in November 2017 had no effect on the breach of contract that occurred when Richards failed to timely file the petition in April 2017 as required by the contract. Richards's failure to file was not attributable to Paul. As the trial court found, Richards did not present evidence that Paul interfered with the April 19, 2017, deadline to file the petition.

¶ 23 Richards's next argument in support of this issue is that *laches* applies and bars Leon's claim. Richards maintains that neither Leon nor Paul told him to stop working on the postconviction petition after April 2017, although he did not timely file the petition at that time. He claims he invested 70 hours working on the postconviction documents and was prejudiced by Leon's and Paul's failure to timely demand a refund. The trial court disagreed with Richards's *laches* argument and so do we.

¶ 24 "*Laches* is the '*** neglect or omission on the part of a complainant to assert a right, taken in conjunction with a lapse of time, and other circumstances causing prejudice to an adverse party, which will operate as a bar to pursue the claim ***.' " *Lincoln-Way Community High School District 210 v. Village of Frankfort*, 51 Ill. App. 3d 602, 611 (1977) (quoting *Matchett v. Rose*, 36 Ill. App. 3d 638, 650-51 (1976)). *Laches* requires delay and prejudice. *Id.* To establish *laches*, a defendant must demonstrate a lack of diligence by the party asserting the claim and that the party asserting *laches* was prejudiced by the delay. *Donelson v. Hinton*, 2018 IL App (3d) 170426, ¶ 11.

8

It is within the trial court's discretion whether to invoke or reject a claim of *laches*. *Courtois v. Millard*, 174 Ill. App. 3d 716, 722 (1988).

¶ 25    The record does not support *laches*. Initially we note that there was not a significant lapse of time in this case. The postconviction petition was to be filed in April 2017, Richards was fired in November 2017 by Leon, who demanded a refund in November 2018. Richards was aware on April 20, 2017, that he had not timely filed Paul's postconviction petition. At that point, the contract required that the $15,000 be returned to Leon upon demand. The fact that Leon did not immediately request a refund did not prejudice Richards. Although Richards contends he diligently began preparing the motion for leave to file a successive postconviction petition and the petition after April 27, 2017, when the forensic DNA motion was decided, he knew then he had breached the contract by failing to file the postconviction petition by the required date. Any work he continued to do on the motion for leave and the petition was with knowledge of his breach. The fact that Leon did not immediately seek a return of the $15,000 did not alter that Richards missed the contractual deadline. Leon demanded a refund in November 2018. Richards did not establish a lack of diligence by Leon or prejudice to himself. The trial court properly found *laches* did not apply.

¶ 26    The final issue is whether the trial court erred in its evidentiary rulings. Specifically, Richards argues that the court improperly precluded from evidence statements from Paul that were relevant to the contract and the delay which Richards wants attributed to him. We agree but find the error harmless because it did not affect the outcome of the trial.

¶ 27    " 'Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and it is generally inadmissible due to its lack of reliability unless it falls within an exception to the hearsay rule.' " *People v. Caffey*, 205 Ill. 2d 52, 88-89 (2001) (quoting *People v.*

9

*Olinger*, 176 Ill. 2d 326, 357 (1997)). A statement by a party opponent is not hearsay. Ill. R. Evid. 801(d)(2) (eff. Oct. 15, 2015). To be admissible, the statement must be offered against a party and be "the party's own statement" or "a statement by a person, or person on behalf of an entity, in privity with the party or jointly interested with the party." Ill. R. Evid. 801(d)(2)(A), (F) (eff. Oct. 15, 2015). We review a trial court's determinations on evidentiary matters for an abuse of discretion. *Caffey*, 205 Ill. 2d at 89.

¶ 28　　　　Defense counsel asked Richards whether Paul agreed to pause the postconviction petition while the forensic DNA motion remained pending. Leon objected and Richards responded that the statement was admissible as a statement of a party-opponent. Richards maintained that Paul shared a joint interest with Leon. The trial court sustained the objection, finding that Paul was not a party opponent and that the statements were not admissible. Richards presented an offer of proof. According to the proffer, he received a letter from Paul in December 2018 in which Paul directed Richards to return $10,000 and keep $5000. Richards testified that he was familiar with Paul's handwriting and the letter was written by Paul. The defense attempted to use the letter as support for its assertion that Paul told Richards to keep $5000 and return $10,000. Because Richards eventually did return $10,000 to Leon, Richards argues there was no breach of contract.

¶ 29　　　　We find the trial court erred when it excluded as hearsay the statements Paul made in the December 2018 letter to Richards. Statements made by someone jointly interested with a party-opponent are not hearsay. Ill. R. Evid. 801(d)(2)(F) (eff. Oct. 15, 2015). The statements of Paul, a nonparty, were offered against Leon, a party-opponent. We consider that Paul was "jointly interested" with Leon. Although we have not found any definitions of "jointly interested," an "interested party" is one who possesses "a personal claim, status, or right which is capable of being affected." *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375-76 (1977). We

10

acknowledge that Paul was not a party to the breach of contract action but accept the reasoning that a "jointly interested" party, such as Paul, would have a claim, status or right that could be affected by the action. Leon hired Richards for Paul's benefit, Paul signed the contract along with Leon and Richards, and Paul and Leon could terminate the contract and demand Richards return the $15,000. Paul himself could have brought a breach of contract claim against Richards. These facts support our conclusion that Paul was jointly interested with Leon in the contract. Because Paul was "jointly interested," we find his statements were not hearsay and the trial court abused its discretion in excluding them.

¶ 30 We find, however, that the trial court's evidentiary error was inconsequential to its decision. The contract authorized Paul to terminate the contract and demand a refund of the full $15,000 to Leon. The contract provided that either Paul or Leon could terminate the contract and "the Fifteen-Thousand *** will be refunded to the guarantor immediately upon demand." The contract did not authorize Paul to negotiate with Richards by allowing him to keep $5000 and refund only $10,000 to Leon's detriment. Thus, Paul's statements would not have altered the outcome of the trial had they been properly admitted. *Benzakry v. Patel*, 2017 IL App (3d) 160162, ¶ 43 (when trial court makes evidentiary error, a new trial is warranted only where the error was substantially prejudicial and affected the outcome of the case). Richards would still have owed Leon $5000.

¶ 31                                         III. CONCLUSION

¶ 32 For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 33 Affirmed.

11